UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-629-RJC

| | |
|---|---|
| MICHAEL RAY CHERRY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STEPHEN PLATT, THOMAS BAREI, )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on a motion for summary judgment by Defendants Stephen Platt ("Platt") and Thomas Barei ("Barei," together with Platt, "Defendants"). (Doc. No. 15).

**I.    BACKGROUND**

　　A.    Procedural Background

Plaintiff Michael Ray Cherry, who was at all times relevant to this case incarcerated at the Mecklenburg County Jail Central facility ("the Central facility"), filed this action on December 9, 2010, pursuant to 42 U.S.C. § 1983. (Doc. No. 1). In addition to Defendants Platt and Barei, Plaintiff also named ARAMARK Co. ("ARAMARK") as a Defendant in his Complaint. ARAMARK provides food service at the Central facility. In his pro se Complaint, Plaintiff claims that Defendants deliberately and intentionally refused to provide him with all or portions of his meals, in violation of his rights "under the Constitution and laws of the United States." (Doc. No. 1 at 4). Specifically, Plaintiff contends that the jail's medical staff put him on a high protein diet and that Defendants have refused to provide him with proper nutrition for his diet. (Id. at 3).

On December 30, 2010, as required by 28 U.S.C. § 1915A, the Court conducted an initial review of Plaintiff's Complaint. The Court dismissed all of Plaintiff's claims except those set out below. (Doc. No. 5). The Court also dismissed without prejudice all claims against ARAMARK. (Id.). On July 27, 2011, Defendants Platt and Barei filed the pending motion for summary judgment. (Doc. No. 15). On August 2, 2011, the Court sent Plaintiff a notice under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Doc. No. 17). On August 11, 2011, Plaintiff filed a response to the motion for summary judgment. (Doc. No. 18).

  B. <u>Factual Background</u>

At all relevant times, Defendants Platt and Barei were employed by ARAMARK as Food Service Directors of the Central facility. Barei was the Food Service Director of the Central facility until August 1, 2010. Platt was the Food Service Director of the Central facility from August 1, 2010 until May 13, 2011. The ARAMARK procedures for providing food to inmates are as follows: An ARAMARK dietician develops, and submits to the Mecklenburg County Sheriff's Office for its approval, a meal plan for inmates in the jail. (Doc. No. 15-3: Smith Decl. at ¶ 3). Once this meal plan is approved and before every meal, the Sheriff's Office forwards to ARAMARK personnel a transmittal form detailing the number and types of meals to be prepared, including any special meals. (Id.). The Sheriff's Department controls the transmittal form and information held within the form, including specific medical or religious dietary requirements. (Id.). Inmates receive meals which are color-coded based on each inmate's specific dietary requirements. (Id.).

As Food Service Directors, Defendants' duties included printing the transmittal form and overseeing the preparation of the daily menu for each inmate. (Id.). Once the meals were prepared, they were placed on a cart for transfer to the detention pods (i.e., units) where the

inmates are located. (Id.). The transmittal forms were sent with the meals and each sheet was to be signed by both ARAMARK and Sheriff's Office staff. (Id.). At no time did ARAMARK personnel (including Defendants) interact with the inmates in the general prison population. (Id.). In addition, in their role as supervisors, Defendants Barei and Platt did not personally prepare the inmates' food. (Doc. Nos. 15-2: Barei Decl. at ¶ 7; 15-1: Platt Decl. at ¶¶ 5-6; 15-3: Smith Decl. at ¶ 7).

### 1. Plaintiff's Allegations Regarding Defendant Barei

Plaintiff alleges that on April 7, 2010, Defendant Barei "sent me food that I was allergic to and would not replace it with a substitute even when contacted by Pod Officers on 4-7-10, time 1820." (Doc. No. 1 at 3). As an Exhibit to his Complaint, Plaintiff attached an Inmate Grievance Form, Grievance Log No. 19417, dated April 7, 2010. (Doc. No. 1-1 at 4). In his grievance, Plaintiff did not complain about being served food to which he was allergic. Rather, he wrote: "Every day I'm not getting the proper portions for my High Protein Diet, No Beans no Turkey and the officers told me that it is the kitchen's fault and there's nothing they can do about it." (Id.). The officer receiving the grievance noted the time (1820, or 6:20 p.m.), and wrote "Kitchen was notified by phone" of the complaint. (Id.).

Despite Plaintiff's allegations against Barei, he has not shown that Barei personally participated in preparing Plaintiff's meal for April 7, 2010. Indeed, on April 7, 2010, Barei was in Chicago, Illinios for ARAMARK training. (Doc. Nos. 15-2: Barei Decl. at ¶ 7; 15-3: Smith Decl. at ¶ 9). As a Food Service Director, Barei did not personally know or interact with Plaintiff, nor did he personally prepare Plaintiff's meals. (Doc. No. 15-2: Barei Decl. at ¶¶ 5-6). On April 21, 2010, Barei made the following written response to Plaintiff's April 7, 2010 grievance: "A turquoise tray is a regular tray with a snack bag at night. If there are beans or

3

Turkey on that meal your tray will have replacements for them. Some meals will be exactly the same as everyone else's. We send the trays to the pods on carts. Please make sure you are taking the right tray." (Doc. No. 1-1 at 4).

There are no further specific allegations concerning Barei in the Complaint, but, rather, only a general allegation that Barei "has not and will not provide me with the proper nutrition that is suppose[d] to come with my diet to support my health." (Doc. No. 1 at 3).

### 2. Plaintiff's Allegations Regarding Defendant Platt

With regard to Platt, Plaintiff alleges:

> Since I've been on the High Protein Diet ordered by the medical staff at the Mecklenburg County Jail, Food Service Worker Mr. Platt, has not and will not provide me with the proper nutrition that is suppose to come with my diet to support my health. On 8-12-10 at time 2351 Mr. Platt would not provide me with my snack bag, on 9-24-10 at time 0435, Food Service Worker Mr. Platt would not give me the proper amounts of proteins and calories that my snack bag should consist of which was approved by medical and Mecklenburg County. On 10-14-10 time 1748 Mr. Platt again refused to provide me with the proper proteins and calories for my diet even after he was told about each protein and calorie value of the product in the snack bag he sent me.[1]

(Doc. No. 1 at 3). As Exhibits to his Complaint, Plaintiff attached three Inmate Grievance Forms relevant to Plaintiff's allegations regarding Defendant Platt: Grievance Log No. 22106, dated August 12, 2010, (Doc. No. 1-1 at 6); Grievance Log No. 22905, dated September 24, 2010, (Doc. No. 1-1 at 2); and Grievance Log No. 23277, dated October 14, 2010, (Doc. 1-1 at 1). On August 12, 2010, Plaintiff submitted the following grievance:

> On 4-26-10 I wrote a request to medical asking them the daily calories of my turquoise diet, E. Gratte response was that I should receive 500 calories and 25 grams of protein over the regular diet, but on 8-12-10 Sgt. Allison says that food service is not going to give me my extra calories and protein which would be my

---

[1] The Court has corrected misspelling and grammatical errors in all of Plaintiff's grievances.

4

> snack bag, is it because I'm a Muslim that's observing the fast for Ramadan and staff and food service are trying to cause me to quit my religious fast, cause no one would tell me why.

(Doc. No. 1-1 at 6). The officer receiving the grievance noted the time (2351, or 11:51 p.m.), and wrote "Inmate Cherry did show me the request form stating the additional calories required for his diet." (Id.). Defendant Platt provided the following written response to Plaintiff's August 12, 2010, grievance: "Mr. Cherry, we will look into the delivery of snack bags with the Ramadan meal. They should come along with it if it's on the transmittal. Mr. Platt, FSD, ARAMARK." (Id.) In fact, the transmittal forms provided by the Sheriff's Department on August 12, 2010, did not indicate that Plaintiff (or any of the other 3 inmates receiving a Ramadan meal) was to receive a snack bag that day. (Doc. Nos. 15-1: Platt Decl. at ¶ 8; 15-3: Smith Decl. at ¶10; 16-1: Transmittal Forms).

> On September 24, 2010, Plaintiff submitted the following grievance:
>
> I have a request form from medical that states I'm suppose[d] to receive 500 calories and 25 grams of protein over the regular diet, you have been substituting the T. Bologna in the snack bag for my no Turkey diet thank you!, but now I'm not getting the proper protein amount, my family [G]oogled the medium boiled eggs they are only 5.5 grams a piece, the soft cheese is only 5.5 to 6.0 grams a slice the bread is only 2 grams of protein per slice and 80 calories, I'm coming up real short in protein, please fix this.

(Doc. No. 1-1 at 2). The officer receiving the grievance noted the time of receipt (4:35 a.m). (Id.). Defendant Platt provided the following written response to Plaintiff's September 24, 2010, grievance: "We are not dieticians. You are provided the portions that are set up for us by a registered nutritionist and approved by the County. Until both of these entities tell us differently, we must continue to serve [] what's on the menu. Mr. Platt, FSD, ARAMARK." (Id.).

> On October 14, 2010, Plaintiff submitted the following grievance:
>
> On 10-14-10 the kitchen sent me 2 boiled eggs in my snack bag [and] P. Tieu

5

witnessed this[;] on grievance 22905[,][2] food service agreed that 2 eggs is not the right amount of protein but that's all I would get, so I wrote medical, grievance 23044,[3] but the response from medical stated that the kitchen (food service) told them that I was being given my 500 calories and 25 grams of protein which is simply a lie, so now this grievance is the last remedy I know of to fix this, my next step will be a law suit against Aramark; 2 eggs = 11 g protein, bread 4 slices = 8 g protein.

(Doc. No. 1-1 at 1). The officer receiving the grievance noted the time (1748, or 5:48 p.m.) and wrote, "I saw the two eggs that inmate Cherry claims but other things in the bag I had not seen." (Id.). Defendant Platt provided the following written response to Plaintiff's October 14, 2010, grievance: "We substitute according to the weight of the product. The 2 eggs are the equal of the bologna that it's replacing. Now, to your point, we probably should do a 3rd egg to compensate for the cheese. I'll speak to my team about this. Mr. Platt." (Id.).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine

---

[2] Grievance Log No. 22095 is the grievance that Plaintiff submitted on September 24, 2010. Contrary to Plaintiff's representation, Defendant Platt's response to the September 24 grievance did not agree that 2 eggs is not the right amount of protein. See (Doc. No. 1-1 at 2).

[3] On October 4, 2010, Plaintiff submitted Grievance Log No. 23044, (Doc. No. 1-1 at 3), stating:

On 10-4-10 I received a response from food service from grievance 22905, food service stated that they was not going to comply to medical orders and provide me with 500 calories and 25 grams of protein in my snack bag for my turquoise diet because food service nutritionist didn't approve it, but how can food service not comply to the orders of medical and only provide 19 grams of protein and about 400 calories, and if you will [G]oogle the products given to me as a substitute in my snack bag for my no turkey no bean diet which is (med) egg, (4) slices of cheese which is soft cheese, you will find these protein counts correct, the med nurse told me that this was a medical issue, and medical would handle it.

The written response to Plaintiff's October 4, 2010, grievance states "I checked with kitchen, dietary snack bags 500 calories & 25 gm protein." The grievance form does not indicate who made this written response. (Id.).

6

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.     ANALYSIS

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). This Court assumes, without deciding, that individuals working for a company that has contracted with a jail to provide essential services may be acting under color of state law.[4]

Plaintiff does not specifically state in his Complaint what constitutional rights he is alleging that Defendants have violated.  He is most likely attempting to invoke his Eighth Amendment right to be free from cruel and unusual punishment, and possibly his right to the free exercise of religion under the First Amendment.  Plaintiff alleges in his Complaint that the medical staff at the Central facility prescribed him a high protein diet and that Defendants have not provided him with the proper nutrition for his high protein diet.  For the following reasons, Defendants are entitled to summary judgment as to Plaintiff's First and Eighth Amendment claims.

First, as Food Service Directors, Platt and Barei do not personally participate in preparing the inmates' meals.  Instead, they supervise the team that prepares the meals.  Further, none of the ARAMARK personnel, including Defendants, actually deliver meals to the inmates.  Rather, ARAMARK prepares the number and type of meals listed on the transmittal form submitted by

---

[4] The Court need not decide whether these ARAMARK employees were acting under color of state law within the meaning of 42 U.S.C. § 1983 because Plaintiff fails to sufficiently allege a violation of his constitutional rights. However, the Court notes that in the context of a prison, the Supreme Court has held that a physician under contract with the state to provide essential medical services to state prisoners was "acting under color of state law for purposes of § 1983 . . . [and that] such conduct is fairly attributable to the State." West v. Atkins, 487 U.S. at 54.  A state's contractual delegation to a private entity, such as ARAMARK, to provide essential food services to inmates, appears comparable for analyzing § 1983 liability.

the Sheriff's Department for each meal, and then delivers carts containing all of those meals to the pods within the prison where the inmates are housed.

Defendants' sole interaction with Plaintiff was through receiving and responding to Inmate Grievance Forms on behalf of ARAMARK. The allegations in Plaintiff's Complaint are not supported by the record in this case, including specifically the Inmate Grievance Forms that documented Plaintiff's actual complaints and Defendants' responses.

### A. Plaintiff's Allegations Regarding Defendant Barei

Plaintiff's Complaint alleges that Barei served the food to which Plaintiff alleges he was allergic on April 7, 2010, and refused to replace it with an alternative meal. The Inmate Grievance Form that Plaintiff submitted for that meal, however, complained about the portions of his meal, not about its contents. See (Doc. No. 1-1 at 4). Additionally, on April 7, 2010, Barei was at an ARAMARK training seminar in Chicago; thus, he was not even at the Central facility and could not have served Plaintiff food to which Plaintiff was allergic. (Barei Decl. at ¶ 7).

### B. Plaintiff's Allegations Regarding Defendant Platt

Plaintiff further alleges in his Complaint that Platt refused to give Plaintiff his snack bag on August 12, 2010. The record shows, however, that the transmittal forms sent to ARAMARK by the Sheriff's Department did not indicate that Plaintiff was to receive a snack bag on that day. (Doc. No. 16-1: Transmittal Forms).

Plaintiff alleges that Platt refused to provide Plaintiff with the proper amounts of protein and calories on September 24, 2010. The record indicates, however, that Platt correctly responded to Plaintiff's grievance by stating that the portions for Plaintiff's meals are set by a registered nutritionist, not by Platt or the food service staff, and approved by the County. (Doc.

9

No. 1-1 at 2).

Plaintiff alleges that Platt refused to provide Plaintiff with the proper amount of proteins and calories on October 12, 2010, even after being "told about each protein and calorie value of the product in the snack bag he sent me." Plaintiff's Inmate Grievance Forms do not support this allegation. That is, on the October 12, 2010 Grievance, Plaintiff reported that in response to his September 24 Grievance, "food service agreed that 2 eggs is not the right amount of protein." However, Platt's response to the September 24 Grievance contains no such statement. See (Doc. No. 1-1 at 2). Furthermore, Defendant Platt responded to Plaintiff's October 12 Grievance by agreeing to provide a third egg to replace the soft cheese. (Id. at 1).

  C.  <u>Eighth Amendment Analysis</u>

Plaintiff has failed to show that any alleged deprivation of food resulted in injury to him, or that Defendants acted with deliberate indifference to his constitutional rights. See <u>King v. Lewis</u>, No. 1:09-cv-165, 2010 WL 2231782, at *2 (W.D.N.C. June 1, 2010) (Mullen, J.) (granting summary judgment for defendants where the inmate plaintiff in a food deprivation case did not present evidence of any "deleterious effect or actual weight loss" and where the defendants' affidavits showed that the menus were prepared by registered dietitians and provided an average of 2600 calories a day) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 302-03 (1991)); <u>see also</u> <u>Robinson v. Walser</u>, No. 5:07-CT-3039-D, 2009 WL 6669324, at *4 (E.D.N.C. Jan. 21, 2009) (granting defendant's summary judgment motion where the inmate did not show deliberate indifference, or that he "has become ill, lost weight, or suffered any physical injury for the alleged lack of food," and where the defendant had enacted policies to "ensure the food is nutritionally adequate and does not harm prisoners' health").

In the instant case, Plaintiff has not presented evidence that he suffered any serious

10

deprivation (e.g., physical harm, significant weight loss, emotional injury, etc.) as a result of any alleged action by either Defendant, nor has he shown that either Defendant intentionally deprived Plaintiff of food.[5] Indeed, as Food Service Directors, Defendants never came into direct contact with Plaintiff and did not directly participate in preparing the inmates' meals. Rather, they oversaw the preparation of meals by others in accordance with the specific number and types of meals listed on the transmittal forms received from the Sheriff's Department. Although Defendants responded to Plaintiff's grievances, there is no evidence that either Defendant personally took any part in any deprivation alleged by Plaintiff.[6] It is well settled that in a § 1983 action, "[l]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (quoting Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md. 1971), aff'd, 451 F.2d 1011 (4th Cir. 1971)). In sum, Defendants are entitled to summary judgment with respect to any potential Eighth Amendment claim by Plaintiff.

D. First Amendment Analysis

Plaintiff fails to show that either Defendant infringed his First Amendment right to free

---

[5] In his response to Defendants' summary judgment motion, Plaintiff contends that he was in "clear emotional distress" from worrying about "the deterioration of his health," see (Doc. No. 18 at 2), but Plaintiff has provided no evidence whatsoever to show that his health, in fact, deteriorated, because of the alleged deprivation of sufficient protein in his diet.

[6] As Defendants note, the record strongly suggests that Plaintiff named Platt and Barei as Defendants merely because they signed their names in response to his grievances, not because either of them personally deprived him of food. Indeed, as Food Service Directors, responding to such grievances was part of their job responsibilities; preparing individual meals for Plaintiff or determining the nutritional content of those meals was not.

exercise of religion.[7]  In his August 12, 2010, grievance, Plaintiff questions whether his lack of receipt of a snack bag with his evening meal was because of his religious practices.  He asks, "[I]s it because I'm a Muslim that's observing the fast for Ramadan and staff and food service are trying to cause me to quit my religious fast . . . .[?]"  (Doc. No. 1-1 at 6).  Although inmates clearly retain their First Amendment right to free exercise of religion in prison, "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause."  Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006).

In this case, Plaintiff has not shown that either Defendant acted intentionally to infringe upon Plaintiff's religious rights.  Rather, the record shows that Plaintiff received a Ramadan meal on August 12, 2010, specifically to allow Plaintiff to participate in his religious fast.  Plaintiff complains that he did not receive a snack bag on August 12.  The record shows, however, that the Sheriff's Department did not request a snack bag for Plaintiff on August 12 with his Ramadan meal.  Plaintiff has also failed to show that either Defendant personally participated in preparing any of Plaintiff's meals, or that either Defendant even knew Plaintiff.  In sum, because Plaintiff has failed to show that Defendants intentionally acted to infringe on Plaintiff's religious practices, summary judgment is appropriate.

IV.  **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that Defendants' motion for summary judgment, (Doc. No. 15), is **GRANTED**, and Plaintiff's action is dismissed with prejudice.

---

[7] To the extent that Plaintiff's allegations could be construed to allege a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq., any claim under RLUIPA would likewise fail, as Plaintiff fails to show that any conduct by Defendants substantially burdened his exercise of religion.

Signed: March 12, 2012

Robert J. Conrad, Jr.
Chief United States District Judge

13